PEOPLE v DENIO

PEOPLE v GILBERT BANKS

PEOPLE v TUCKER

Docket Nos. 105328, 101601, 103191. Argued March 4, 1997 (Calendar Nos. 4-6). Decided June 17, 1997.

Kimber Denio pleaded guilty in the Muskegon Circuit Court, R. Max Daniels, J., of conspiracy to deliver less than fifty grams of cocaine and conspiracy to deliver marijuana, and was sentenced to consecutive prison terms pursuant to the consecutive sentencing provision of MCL 333.7401(3); MSA 14.15(7401)(3). The Court of Appeals, CAVANAGH, P.J., and SAWYER and R. L. TEMPLIN, JJ., vacated the sentences and remanded for resentencing to concurrent prison terms, reasoning that the sentences were not imposed pursuant to a felony enumerated in § 7401(3), but instead were imposed pursuant to the conspiracy statute, MCL 750.157a; MSA 28.354(1) (Docket No. 182499). The people appeal.

Gilbert Banks pleaded guilty in the Muskegon Circuit Court, James M. Graves, Jr., J., of conspiracy to deliver less than fifty grams of cocaine and possession with intent to deliver less than fifty grams of cocaine, and, pursuant to § 7401(3), was sentenced to consecutive prison terms. The Court of Appeals, D. E. HOLBROOK, JR., J., and SHEPHERD and MARILYN KELLY, JJ., affirmed in an unpublished opinion per curiam (Docket No. 164750). The defendant appeals.

Robert Lee Tucker was convicted by a jury in the Mason Circuit Court, Richard I. Cooper, J., of conspiracy to deliver less than fifty grams of cocaine and delivery of less than fifty grams of cocaine, and, pursuant to § 7401(3), was sentenced to consecutive prison terms. The Court of Appeals, MACKENZIE, P.J., and GRIFFIN and NEFF, JJ., affirmed in an unpublished opinion per curiam (Docket No. 151725). The defendant appeals.

In an opinion by Justice RILEY, joined by Chief Justice MALLETT, and Justices BRICKLEY, BOYLE, and WEAVER, the Supreme Court *held*:

The Legislature intended the consecutive sentencing provision of MCL 333.7401(3); MSA 14.15(7401)(3) to fall within the term "penalty" in the conspiracy statute because § 7401(3), like the conspiracy statute, is directed at the sentencing court, the entity that imposes penalties. Consecutive sentences for an enumerated drug

offense and for conspiracy to commit that offense do not violate double jeopardy, even when the offenses are committed in the same criminal transaction because the Legislature intended multiple punishments at a single trial for persons who commit a drug offense enumerated in § 7401(3) and conspiracy to commit that drug offense.

1. The term "penalty" in the conspiracy statute is directed at the sentencing court, the entity that imposes penalties, as is the consecutive sentencing provision of § 7401(3). Thus, § 7401(3) constitutes a "penalty" as that term is used in the conspiracy statute. Section 7401(3) was intended to deter drug offenses, and the need for deterrence is not diminished when the crime is conspiracy to commit the enumerated drug offense rather than the drug offense itself. Because § 7401(3) falls within the term "penalty" in the conspiracy statute, the trial court properly imposed Denio's cocaine conspiracy sentence to run consecutively with his marijuana conspiracy sentence.

2. The guarantee against double jeopardy protects against multiple prosecutions and multiple punishments for the same offense. The intent of the Legislature is the determining factor under the United States and Michigan Constitutions. The Legislature may determine what activity constitutes a criminal offense subject to criminal penalty. The Double Jeopardy Clauses restrict the courts from imposing more punishment than that intended by the Legislature. Thus, if the Legislature desires, it may specifically authorize penalties for what otherwise would be the same offense. Cumulative punishment of the same conduct under two different statutes in a single trial does not run afoul of the United States or Michigan Double Jeopardy Clause.

3. Under both federal and state analyses, it is clear that the Legislature intended to separately punish a defendant convicted both of conspiracy to commit a drug offense and of the substantive drug offense, even if committed in the same criminal transaction.

*Denio*, reversed.

*Banks*, affirmed.

*Tucker*, affirmed.

Justice CAVANAGH, dissenting, stated that the conspiracy statute provides that a person convicted of a conspiracy shall be punished by a penalty equal to what could be imposed if convicted of the underlying crime. Its reference to the underlying substantive offense is simply a shortcut for allotting prison terms without having to enact separate statutory provisions for conspiracy that merely repeat the allowable prison terms or fines enumerated for

every underlying substantive offense in the Penal Code and the controlled substances act.

It is indisputable that Denio's convictions were obtained pursuant to the conspiracy statute, and, therefore, it is equally indisputable that his sentences were, and could only be, imposed pursuant to that statute. The general reference in the conspiracy statute to the penalty prescribed for the relevant underlying crime is superseded by the specific requirement of § 7401(3) that a mandatory imposition of consecutive sentences applies only when a defendant has a term of imprisonment imposed pursuant to § 7401(3)(2)(a) or § 7403(2)(a)(i), (ii), (iii), (iv). The fact that the more specific provision of § 7401(3) was enacted more than a decade after the general language of the conspiracy statute further supports this conclusion.

Justice KELLY concurred with Justice CAVANAGH only in *Denio* and took no part in the decisions of *Banks* or *Tucker.*

214 Mich App 647; 543 NW2d 66 (1995) reversed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Tony Tague,* Prosecuting Attorney, and *Kevin A. Lynch* and *Victor A. Fitz,* Assistant Prosecuting Attorneys, for the people in *Denio* and *Banks.*

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Chris J. VanOosterum,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people in *Tucker.*

*Jeanice Dagher-Margosian* for defendant Denio.

*Joan Ellerbusch Morgan* for defendant Banks.

State Appellate Defender (by *Anne Yantus*) for defendant Tucker.

Amici Curiae:

*William Forsyth,* President, *John D. O'Hair,* Wayne County Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attor-

ney, for Prosecuting Attorneys Association of Michigan.

*Robin M. Lerg* for Families Against Mandatory Minimums Foundation and National Association of Criminal Defense Lawyers.

RILEY, J. In *People v Denio*, we are asked to construe the conspiracy statute, MCL 750.157a; MSA 28.354(1),[1] as it relates to the consecutive sentencing provision of MCL 333.7401(3); MSA 14.15(7401)(3).[2] The conspiracy statute mandates that a person con-

---

[1] Section 157a provides:

> Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy punishable as provided herein:
>
> (a) except as provided in paragraphs (b), (c) and (d) if commission of the offense prohibited by law is punishable by imprisonment for 1 year or more, the person convicted under this section shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit and in the discretion of the court an additional penalty of a fine of $10,000.00 may be imposed.
>
> (b) Any person convicted of conspiring to violate any provision of this act relative to illegal gambling or wagering or any other acts or ordinances relative to illegal gambling or wagering shall be punished by imprisonment in the state prison for not more than 5 years or by a fine of not more than $10,000.00, or both such fine and imprisonment.
>
> (c) If commission of the offense prohibited by law is punishable by imprisonment for less than 1 year, except as provided in paragraph (b), the person convicted under this section shall be imprisoned for not more than 1 year nor fined more than $1,000.00, or both such fine and imprisonment.
>
> (d) Any person convicted of conspiring to commit a legal act in an illegal manner shall be punished by imprisonment in the state prison for not more than 5 years or by a fine of not more than $10,000.00, or both such fine and imprisonment in the discretion of the court.

[2] Section 7401(3) provides:

victed of conspiracy "shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit . . . ." The consecutive sentencing provision of § 7401(3) mandates that prison terms for the enumerated drug offenses must run consecutively with sentences imposed for other felonies. The issue is whether the consecutive sentencing provision of § 7401(3) falls within the term "penalty" in the conspiracy statute. In *People v Banks* and *People v Tucker*, we are asked to determine whether consecutive sentences for an enumerated drug offense and for conspiracy to commit the enumerated drug offense, committed in the same criminal transaction, violates the protection against double jeopardy.

We hold that the Legislature intended the consecutive sentencing provision of § 7401(3) to fall within the term "penalty" in the conspiracy statute because § 7401(3), like the conspiracy statute, is directed at the sentencing court, the entity that imposes penalties. We further hold that consecutive sentences for an enumerated drug offense and for conspiracy to commit the enumerated drug offense do not violate double jeopardy, even when the offenses are committed in the same criminal transaction. We base this

---

A term of imprisonment imposed pursuant to subsection (2)(a) or section 7403(2)(a)(i), (ii), (iii), or (iv) shall be imposed to run consecutively with any term of imprisonment imposed for the commission of another felony. An individual subject to a mandatory term of imprisonment under subsection (2)(a) or section 7403(2)(a)(i), (ii), (iii), or (iv) shall not be eligible for probation, suspension of that sentence, or parole during that mandatory term, except and only to the extent that those provisions permit probation for life, and shall not receive a reduction in that mandatory term of imprisonment by disciplinary credits or any other type of sentence credit reduction.

holding on our conclusion that the Legislature intended multiple punishments at a single trial for persons who commit a drug offense enumerated in § 7401(3) and conspiracy to commit that drug offense. Accordingly, we reverse the Court of Appeals decision in *People v Denio* and affirm the Court of Appeals decisions in *People v Banks* and *People v Tucker*.

### FACTS AND PROCEEDINGS

### *PEOPLE v DENIO*

On August 3, 1994, during trial, Kimber Denio pleaded guilty of conspiracy to deliver less than fifty grams of cocaine, MCL 750.157a; MSA 28.354(1), MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv), and conspiracy to deliver marijuana, MCL 750.157a; MSA 28.354(1), MCL 333.7401(2)(d); MSA 14.15(7401)(2)(d).[3] On September 7, 1994, pursuant to the consecutive sentencing provision of § 7401(3), the trial court sentenced Denio to consecutive terms of three to twenty years in prison on the conspiracy to deliver cocaine conviction and two to four years in prison on the conspiracy to deliver marijuana conviction.

Denio appealed his sentences, arguing that the trial court erred in imposing consecutive sentences. The Court of Appeals agreed, remanding Denio's case to the trial court directing it to sentence him to concurrent prison terms.[4] The Court of Appeals reasoned that the consecutive sentencing provision of § 7401(3)

---

[3] The people agreed to cancel an arrest warrant against Denio for possession with intent to deliver cocaine and possession of LSD in exchange for his plea agreement.

[4] 214 Mich App 647; 543 NW2d 66 (1995).

did not authorize the trial court to sentence Denio to consecutive prison terms because his sentences were not imposed pursuant to a felony enumerated in § 7401(3), but were, instead, imposed pursuant to the conspiracy statute.[5] On May 21, 1996, we granted the people's application for leave to appeal.[6]

### PEOPLE v BANKS

On April 5, 1993, Gilbert Banks pleaded guilty of conspiracy to deliver less than fifty grams of cocaine, MCL 750.157a; MSA 28.354(1), and possession with intent to deliver less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv).[7] On May 5, 1993, pursuant to the consecutive sentencing provision of § 7401(3), the trial court sentenced Banks to consecutive terms of 3½ to 20 years in prison for each offense.

Banks appealed his sentences, arguing that the trial court erred in imposing consecutive sentences. The Court of Appeals disagreed, holding that § 7401(3) mandated consecutive sentences.[8] On May 24, 1996, we granted Banks' application for leave to appeal.[9]

---

[5] *Id.* at 649.

[6] 451 Mich 897.

[7] The people agreed to dismiss the supplemental warrant against Banks for habitual offender, fourth offense.

[8] Unpublished opinion per curiam, issued October 20, 1994 (Docket No. 164750).

[9] 451 Mich 899. Leave was limited to whether

> 1) the Legislature intended to require consecutive sentencing for a substantive drug law conviction and a conviction of conspiracy to commit that same drug law offense, where the two convictions arise from a single transaction, and (2) defendant's pleas of guilty constitute a waiver of this argument.

*PEOPLE v TUCKER*

On February 14, 1992, following a jury trial, Robert Lee Tucker was convicted of conspiracy to deliver less than fifty grams of cocaine, MCL 750.157a; MSA 28.354(1), and delivery of less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv). On March 17, 1992, pursuant to the consecutive sentencing provision of § 7401(3), the trial court sentenced Tucker to consecutive terms of two to twenty years in prison for each offense.

Tucker appealed his sentences, arguing that they violated the principle of proportionality. The Court of Appeals disagreed and affirmed the 'sentences imposed by the trial court.[10] On May 24, 1996, we granted Tucker's application for leave to appeal.[11]

I

*PEOPLE v DENIO*

A

In *Denio*, we are asked to interpret the conspiracy statute and the consecutive sentencing provision of § 7401(3). Questions of statutory interpretation are questions of law, see *St George Greek Orthodox Church of Southgate v Laupmanis Associates, PC*, 204 Mich App 278, 282; 514 NW2d 516 (1994), which we review de novo. *Cardinal Mooney High School v*

---

[10] Unpublished opinion per curiam, issued April 10, 1995 (Docket No. 151725).

[11] 451 Mich 899. Leave was limited to

whether the Legislature intended to require consecutive sentencing for a substantive drug law conviction and a conviction of conspiracy to commit that same drug law offense, where the two convictions arise from a single transaction.

*Michigan High School Athletic Ass'n*, 437 Mich 75, 80;
467 NW2d 21 (1991).

The purpose of statutory interpretation is to give
effect to the intent of the Legislature. *People v Morris*, 450 Mich 316, 326; 537 NW2d 842 (1995). If a
statute is clear, we enforce it as plainly written. *Id.*
However, if a statute is susceptible to more than one
interpretation, we must engage in judicial construction and interpret the statute. *Id.*; *Piper v Pettibone
Corp*, 450 Mich 565, 571; 542 NW2d 269 (1995). Furthermore, a statute that is unambiguous on its face
can be " 'rendered ambiguous by its interaction with
and its relation to other statutes.' " *People v Jahner*,
433 Mich 490, 496; 446 NW2d 151 (1989), quoting 2A
Sands, Sutherland Statutory Construction, § 46.04, pp
86-87.

In interpreting a statute, words are to be given their
common, generally accepted meaning. MCL 8.3a;
MSA 2.212(1); *Hawley v Snider*, 346 Mich 181, 185;
77 NW2d 754 (1956). Furthermore, when terms are
not expressly defined by a statute, a court may consult dictionary definitions. See *In re Forfeiture of
Bail Bond*, 209 Mich App 540, 544; 531 NW2d 806
(1995).

The "rule of lenity" provides that courts should mitigate punishment when the punishment in a criminal
statute is unclear. *Jahner, supra* at 499-500. This rule,
however, does not apply when construing the consecutive sentencing provision of § 7401(3) because our
Legislature mandated in MCL 333.1111(2); MSA
14.15(1111)(2) that provisions of the Public Health
Code, which include § 7401(3), are to be "liberally
construed for the protection of the health, safety, and
welfare of the people of this state." *Morris, supra* at

326-327. Furthermore, the "rule of lenity" does not apply in this case, given the penal nature of § 7401(3) and the conspiracy statute. See *Morris, supra* at 327.[12]

B

Turning to the case now before us, Denio argues that § 7401(3) did not authorize the trial court to impose consecutive sentences because he was not convicted of a drug offense enumerated in that section; rather, he was convicted of conspiracy to commit an enumerated drug offense. We are not persuaded.

Denio was convicted of conspiracy to deliver less than fifty grams of cocaine and conspiracy to deliver marijuana. The conspiracy statute provides that a person convicted of conspiracy

> shall be punished by a *penalty* equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit and in the discretion of the court an additional penalty of a fine of $10,000.00 may be imposed. [MCL 750.157a(a); MSA 28.354(1)(a) (emphasis added).]

A person convicted of delivery of less than fifty grams of cocaine "shall be imprisoned for not less than 1 year nor more than 20 years, and may be fined not more than $25,000.00, or placed on probation for life."[13] At the time of Denio's trial, a person convicted of delivery of marijuana could be punished "by

---

[12] "The rule of lenity properly applies only in the circumstances of an ambiguity, or in the absence of any firm indication of legislative intent." *People v Wakeford*, 418 Mich 95, 113-114; 341 NW2d 68 (1983).

[13] MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv).

imprisonment for not more than 2 years, or . . . fine[d] . . . [for] not more than $2,000.00, or both."[14]

The trial court sentenced Denio to consecutive terms of imprisonment for his convictions pursuant to § 7401(3), which provides in pertinent part:

A term of imprisonment imposed pursuant to subsection (2)(a) or section 7403(2)(a)(i), (ii), (iii), or (iv) shall be imposed to run consecutively with any term of imprisonment imposed for the commission of another felony.

The parties do not dispute that the conspiracy statute unambiguously mandates that a person convicted of conspiracy must be punished by the same "penalty" as if he were convicted of the substantive crime he conspired to commit. They also do not dispute that § 7401(3) unambiguously mandates that prison terms for the enumerated drug offenses must run consecutively with sentences imposed for other felonies. The parties differ, however, in their definition of the term "penalty" in the conspiracy statute. Essentially, Denio argues that the consecutive sentencing provision of § 7401(3) does not fall within the term

---

[14] MCL 333.7401(2)(d); MSA 14.15(7401)(2)(d). Subsection 7401(2)(d), which was amended by 1994 PA 221 and became effective on June 1, 1994, provides:

Marihuana or a mixture containing marihuana, is guilty of a felony, punishable as follows:

(i) If the amount is 45 kilograms or more, or 200 plants or more, by imprisonment for not more than 15 years or a fine of not more than $10,000,000.00, or both.

(ii) If the amount is 5 kilograms or more but less than 45 kilograms, or 20 plants or more but fewer than 200 plants, by imprisonment for not more than 7 years or a fine of not more than $500,000.00, or both.

(iii) If the amount is less than 5 kilograms or fewer than 20 plants, by imprisonment for not more than 4 years or a fine of not more than $20,000.00, or both.

"penalty"; the people argue it does. We believe both definitions are plausible, and therefore engage in statutory construction to interpret the conspiracy statute. See *Morris, supra* at 326; *Piper, supra* at 571.

This Court interpreted the term "penalty" in the conspiracy statute in *Jahner, supra,* where we addressed whether a person sentenced to life imprisonment for conspiracy to commit first-degree murder is eligible for parole consideration under MCL 791.234(4); MSA 28.2304(4). Section 234(4), the so-called "lifer law," provides that those sentenced to life for first-degree murder or to a minimum term of imprisonment for a major controlled substance offense, are not eligible for parole consideration. We concluded that a person convicted of conspiracy to commit first-degree murder was eligible for parole consideration because the term "penalty" in the conspiracy statute does not include the parole considerations set forth in the "lifer law." *Id.* at 502-503. We reasoned that the Legislature could not have intended parole considerations to fall within the term "penalty" in the conspiracy statute because the conspiracy statute is directed at the sentencing court, the entity that imposes penalties, and the "lifer law" is directed at the Parole Board, the independent body that reduces penalties imposed by trial courts on the basis of rehabilitation:

> While the conspiracy statute and the "lifer law" both address in general terms the punishment of criminal activity and therefore should be read in pari materia, the two statutes address separate and distinct considerations. The conspiracy statute is directed to the trial court and requires that it impose a particular "penalty" for the offense. However, the statutory command is discharged at the time of sentencing. By contrast, the "lifer law" is not directed at the

sentencing court, but rather governs the power and author-
ity of the Parole Board to grant parole under certain cir-
cumstances. Given the autonomy granted to the Parole
Board and the separate function which it serves, we do not
believe that the term "penalty" as it is used in the conspir-
acy statute encompasses the parole considerations set forth
in the "lifer law." [*Id.* at 502.]

Unlike parole considerations directed to the Parole
Board, the consecutive sentencing provision of
§ 7401(3), like the conspiracy statute, is directed at
the sentencing courts. Accordingly, we hold that the
consecutive sentencing provision of § 7401(3) consti-
tutes a "penalty" as that term is used in the conspir-
acy statute. Thus, being a "penalty," the trial court
was required to impose Denio's sentence for conspir-
acy to deliver less than fifty grams of cocaine to run
consecutively with his sentence for conspiracy to
deliver marijuana.

We note that our holding is consistent with the leg-
islative purpose of the consecutive sentencing provi-
sion of § 7401(3), which was to deter drug offenses:

The enhancement of punishment through consecutive
sentencing is a legislative action taken for the ostensible
purpose of deterring certain criminal behavior. *People v
Harden,* 434 Mich 196, 201; 454 NW2d 371 (1990). With its
focus on enhancement of the punishment for commission
of certain controlled substance offenses, it is apparent that
the aim of § 7401(3) is to deter commission of those
offenses by mandating that sentences imposed for the drug
crimes enumerated in the statute run consecutively to
sentences imposed for other felonies. [*Morris, supra* at 327-
328.]

Furthermore, the need for deterrence is not dimin-
ished when the crime at issue is conspiracy to com-
mit the enumerated drug offense rather than the enu-

merated drug offense itself. In fact, the need for deterrence is arguably more dire given the number of people involved in the crime:

> "[C]ollective criminal agreement—partnership in crime— presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise." [*People v Carter*, 415 Mich 558, 570; 330 NW2d 314 (1982), quoting *Callanan v United States*, 364 US 587, 593-594; 81 S Ct 321; 5 L Ed 2d 312 (1961).]

Finally, the common meaning of "penalty" supports our holding. The *Random House Webster's College Dictionary* defines "penalty" as "a punishment imposed or incurred for a violation of law [or] rule . . . ." A sentencing court imposes punishment. By contrast, the Parole Board relaxes the punishment already imposed by the courts.

Accordingly, because the consecutive sentencing provision of § 7401(3) falls within the term "penalty" in the conspiracy statute, the trial court properly imposed Denio's cocaine conspiracy sentence to run consecutively with his marijuana conspiracy sentence. Thus, we reverse the Court of Appeals decision that reversed the decision of the trial court.

II

*PEOPLE v BANKS* AND *PEOPLE v TUCKER*

A

Banks and Tucker initially argue that their respective sentencing judges erred in imposing consecutive sentences because conspiracy to commit an enumerated drug offense does not constitute "another felony" as used in § 7401(3), especially because they committed both the enumerated drug offense and the other felony in the same criminal transaction. We reject defendants' arguments without further analysis because this Court in *Morris, supra,* held that "another felony" includes "*any* other felony violation for which a defendant is being sentenced," *id.* at 328 (emphasis added), "regardless of whether the offenses were committed as part of the same transaction or in different and distinct transactions." *Id.* at 338.

Defendants also argue that consecutive sentences for an enumerated drug offense and for conspiracy to commit the enumerated drug offense, committed in the same criminal transaction, violate the protection against double jeopardy. This alternative argument proffered by Banks and Tucker is an issue of first impression. It was left unresolved by *Morris.*[15] We address that issue today, and, for the reasons that follow, find no double jeopardy violation.[16]

---

[15] Our issue in the present cases is one of statutory construction. No challenge has been raised regarding the constitutional validity of § 7401(3) on its face or as applied. [*Morris, supra* at 324.]

[16] In *Banks,* we asked the parties to address the issue whether Banks' pleas of guilty waived his right to challenge the trial court's imposition of consecutive sentences pursuant to § 7401(3). Banks' consecutive sentencing argument is based on double jeopardy implications. This Court in *Peo-*

B

The guarantee against double jeopardy protects against multiple prosecutions and multiple punishments for the "same offense."[17] At issue in the cases before us is whether a drug offense enumerated in § 7401(3) and conspiracy to commit that enumerated drug offense, when committed in the same criminal transaction, constitutes the "same offense" for double jeopardy purposes. The intent of the Legislature is the determining factor under the Double Jeopardy Clause of the United States and Michigan Constitutions. *People v Robideau*, 419 Mich 458, 485; 355 NW2d 592 (1984). Therefore, the issue, stated more precisely, is whether the Legislature intended multiple punishments at a single trial for persons who commit, in the same criminal transaction, a drug offense enumerated

---

*ple v New*, 427 Mich 482, 491; 398 NW2d 358 (1986), relying on federal precedent, concluded that a defendant pleading guilty could raise on appeal double jeopardy claims, unless his claim "relates solely to the capacity of the state to prove defendant's factual guilt . . . ." In *United States v Broce*, 488 US 563, 575-576; 109 S Ct 757; 102 L Ed 2d 927 (1989), the United States Supreme Court held that a guilty plea waives a defendant's double jeopardy claim if the court must rely on evidence outside the guilty plea record to determine the merits of his claim. Accordingly, Banks' argument that his sentences violate the Double Jeopardy Clause of the Michigan Constitution on the basis of "factual double jeopardy," see *Carter, supra* at 583-584, is waived. However, the remainder of Banks' double jeopardy arguments are not waived because analysis of evidence outside the guilty plea record is not required.

[17] The Double Jeopardy Clause of the United States Constitution provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." US Const, Am V. This guarantee has been made applicable to the states through the Fourteenth Amendment. *North Carolina v Pearce*, 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969). Similarly, the Double Jeopardy Clause of the Michigan Constitution provides: "[n]o person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15.

in § 7401(3) and conspiracy to commit that drug offense.[18]

The United States Supreme Court has repeatedly held that the test enumerated in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932), is to be used to determine legislative intent in analyzing the protection afforded by the Double Jeopardy Clause of the United States Constitution:

> For over half a century we have determined whether a defendant has been punished twice for the "same offense" by applying the rule set forth in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932). If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Ibid.* In subsequent applications of the test, we have often concluded that two different statutes define the "same offense," typically because one is a lesser included offense of the other. [*Rutledge v United States*, 517 US 292, ___; 116 S Ct 1241; 134 L Ed 2d 419, 426 (1996).]

If the *Blockburger* test is satisfied, it is presumed that the Legislature did not intend to punish the defendant under both statutes. *Whalen v United States*, 445 US 684, 691-692; 100 S Ct 1432; 63 L Ed 2d 715 (1980). This presumption is rebutted, however, by a clear indication that the Legislature intended punishment under both statutes. *Albernaz v United States*, 450 US 333, 340; 101 S Ct 1137; 67 L Ed 2d 275 (1981); *Mis-*

---

[18] Our analysis today is limited to multiple punishments at a single trial. We do not address the issue concerning multiple punishments in separate trials, which implicates the double jeopardy protection against successive prosecutions.

*souri v Hunter*, 459 US 359, 368-369; 103 S Ct 673; 74
L Ed 2d 535 (1983).

This Court has rejected the *Blockburger* test in ana-
lyzing the Double Jeopardy Clause of the Michigan
Constitution, and instead uses traditional means to
determine the intent of the Legislature, such as the
subject, language, and history of the statutes.
*Robideau, supra* at 486-487. In *Robideau, supra* at
487-488, we provided some guidance in furtherance of
this task:

> Statutes prohibiting conduct that is violative of distinct
> social norms can generally be viewed as separate and ame-
> nable to permitting multiple punishments. A court must
> identify the type of harm the Legislature intended to pre-
> vent. Where two statutes prohibit violations of the same
> social norm, albeit in a somewhat different manner, as a
> general principle it can be concluded that the Legislature
> did not intend multiple punishments. For example, the
> crimes of larceny over $100, MCL 750.356;  MSA 28.588,
> and larceny in a building, MCL 750.360;  MSA 28.592,
> although having separate elements, are aimed at conduct
> too similar to conclude that multiple punishment was
> intended.
>
> A further source of legislative intent can be found in the
> amount of punishment expressly authorized by the Legisla-
> ture. Our criminal statutes often build upon one another.
> Where one statute incorporates most of the elements of a
> base statute and then increases the penalty as compared to
> the base statute, it is evidence that the Legislature did not
> intend punishment under both statutes. The Legislature has
> taken conduct from the base statute, decided that aggravat-
> ing conduct deserves additional punishment, and imposed it
> accordingly, instead of imposing dual convictions.
>
> We do not intend these principles to be an exclusive list.
> Whatever sources of legislative intent exist should be con-
> sidered. If no conclusive evidence of legislative intent can

be discerned, the rule of lenity requires the conclusion that separate punishments were not intended.[19]

In analyzing the intent of the Legislature, it must be remembered that "the Legislature's authority to define a single criminal 'act' or 'offense' is not diminished by the Double Jeopardy Clause." *People v Wakeford*, 418 Mich 95, 108; 341 NW2d 68 (1983). The Legislature is free to determine what activity constitutes a criminal offense subject to criminal penalty. *Id.*; *Robideau*, *supra* at 485. The Double Jeopardy Clauses restrict the courts from imposing more punishment than that intended by the Legislature. *Wakeford*, *supra* at 108; *Robideau*, *supra* at 469. Thus, if the Legislature desires, it may specifically authorize penalties for what would otherwise be the "same offense." *People v Sturgis*, 427 Mich 392, 403; 397 NW2d 783 (1986). "[C]umulative punishment of the same conduct under two different statutes in a single trial does not run afoul of the Double Jeopardy Clause in either the federal or state system." *Id.*

C

Turning to the cases now before us, we conclude that the trial courts' imposition of consecutive sentences for Banks' and Tucker's conspiracy and drug convictions did not run afoul of the Double Jeopardy Clause of the United States or Michigan Constitution. Under both federal and state analyses, it is clear that the Legislature intended to separately punish a defendant convicted both of conspiracy to

---

[19] As stated in part I, the rule of lenity does not apply in this case, given the Legislature's mandate that the Public Health Code is to be "liberally construed for the protection of the health, safety, and welfare of the people of this state." *Morris*, *supra* at 326-327.

commit a drug offense and of the substantive drug offense, even if he committed the offenses in the same criminal transaction.

With regard to the Double Jeopardy Clause of the United States Constitution, Banks' and Tucker's conspiracy and drug offenses do not constitute the "same offense" under the *Blockburger* test because conspiracy requires a combination or agreement and the drug offenses require possession of an illegal drug. Accordingly, defendants' consecutive sentences, imposed pursuant to § 7401(3), do not violate the Due Process Clause of the United States Constitution.

The consecutive sentencing provision of § 7401(3) also does not violate the Double Jeopardy Clause of the Michigan Constitution. Focusing on the first source of legislative intent enumerated in *Robideau, supra* at 487-488, harm to society, the crimes of conspiracy and drug possession violate distinct social norms. The crime of conspiracy is a continuing offense; it "is presumed to continue until there is affirmative evidence of abandonment, withdrawal, disavowal, or defeat of the object of the conspiracy." *United States v Castro*, 972 F2d 1107, 1112 (CA 9, 1992). Accordingly, the crime of conspiracy poses a greater threat to society than the substantive crime forming the object of the conspiracy because "each day's acts bring a renewed threat of the substantive evil [the legislature] sought to prevent." *Toussie v United States*, 397 US 112, 122; 90 S Ct 858; 25 L Ed 2d 156 (1970).[20] As the New Jersey Supreme Court explained:

---

[20] See also *United States v Morales*, 11 F3d 915, 921 (CA 9, 1993) ("The other feature displayed by continuing offenses is that the harm done to

> The [drug] conspiracy evidenced continuing and pro-
> longed, rather than episodic, involvement in crime. The
> object of the conspiracy constituted a direct threat to soci-
> ety, as well as the indirect, albeit real, harm to persons who
> eventually would be mired in drugs. [*In re Goldberg*, 105 NJ
> 278, 283; 520 A2d 1147 (1987).]

In contrast to the overreaching and perpetual harm
to society caused by the crime of conspiracy, the spe-
cific aim of the Legislature in enacting § 7401 was to
curb drug trafficking. As indicated in the legislative
analysis:

> "Some persons claim that the state has failed to stem
> drug traffic because the penalties for drug dealing are not
> severe enough, and law enforcement tools are inadequate.
> They contend that the potential for profit in drug dealing is
> so great that Michigan's present penalties pose little or no
> deterrent to would-be violators, with lenient probation and
> parole policies weakening the threat of imprisonment still
> further." [*People v Fields*, 448 Mich 58, 64; 528 NW2d 176
> (1995), quoting House Legislative Analysis, HB 4190, Third
> Analysis, May 17, 1978.]

Another distinction between conspiracy and the sub-
stantive drug offense is that "the conspiracy statute
punishes the planning of the offense" and the drug
statute "punishes the actual commission of the
crime." *Carter, supra* at 586.

The second source of legislative intent enumerated
in *Robideau, supra* at 487-488, the amount of punish-
ment expressly authorized by the Legislature, is not
relevant to the cases now before us because the con-

---

society through their commission necessarily continues on for as long as
the crime is ongoing"); *Carter, supra* at 570 ("[T]he danger which a con-
spiracy generates is not confined to the substantive offense which is the
immediate aim of the enterprise").

spiracy statute does not incorporate "most of the elements" of the drug statute. See *id.* at 487. We note, however, that the conspiracy statute provides for punishment equal to the substantive crime; it does not impose an hierarchical, harsher penalty based on the presence of aggravating factors.[21]

Finally, the fact that Banks and Tucker committed the conspiracy and the substantive drug offense in the same criminal transaction is of no consequence. We have repeatedly held that conspiracy is a crime that is separate and distinct from the substantive crime that is its object. *Carter, supra* at 569; *People v Tinskey,* 394 Mich 108; 228 NW2d 782 (1975); *People v Chambers,* 279 Mich 73; 271 NW 556 (1937). Furthermore, the crime of conspiracy does not merge into the offense committed in furtherance of the conspiracy. MCL 768.4; MSA 28.1027 (abolishing the merger doctrine); *People v Causley,* 299 Mich 340; 300 NW 111 (1941).

Therefore, we hold, on the basis of the intent of the Legislature, that it does not violate the Double Jeopardy Clause of either the United States or Michigan Constitution to sentence a defendant to consecutive prison terms for conviction of a drug offense enumerated in § 7401(3) and conspiracy to commit that offense, even if committed in the same criminal transaction. Accordingly, the Court of Appeals properly affirmed the trial courts' imposition of consecutive sentences.[22]

---

[21] We acknowledge that the conspiracy statute gives the sentencing judge discretion to impose an additional $10,000 penalty.

[22] Defendants argue that prosecutors will add a conspiracy·charge to the substantive drug charge, irrespective of whether there is evidence to substantiate the conspiracy charge, whenever a group of people are

III

For the reasons stated above, we reverse the Court of Appeals decision in *People v Denio* holding that the trial court was without authority to impose consecutive sentences pursuant to § 7401(3). Consecutive sentences were proper. Furthermore, we affirm the Court of Appeals decisions in *People v Banks* and *People v Tucker*. Contrary to defendants' arguments, their consecutive sentences, imposed pursuant to § 7401(3), did not violate the Double Jeopardy Clause of either the United States or Michigan Constitution.

MALLETT, C.J., and BRICKLEY, BOYLE, and WEAVER, JJ., concurred with RILEY, J.

CAVANAGH, J. (*dissenting*). In *Denio*, the majority holds that the consecutive sentencing provision of MCL 333.7401(3); MSA 14.15(7401)(3), falls within the term "penalty" in the conspiracy statute, MCL 750.157a; MSA 28.354(1). Because this holding is in direct contravention of the express language of § 7401(3), I dissent.

---

involved in the drug activity. We recognize this potential for abuse. However, we believe that the procedural safeguards in place sufficiently guard against such concern. Specifically, a prosecutor cannot file an information for a felony until an examining magistrate at a preliminary examination has determined that probable cause exists that the defendant committed the charged crimes. MCL 766.13; MSA 28.931 (preliminary examination); MCL 767.42; MSA 28.982 (preliminary examination condition precedent to filing information); MCR 6.110(F) . Further, if the magistrate finds probable cause exists, the defendant can seek review of that decision in the circuit court. *Genesee Prosecutor v Genesee Circuit Judge*, 391 Mich 115, 119-120; 215 NW2d 145 (1974). With these safeguards noted, we bring this potential for abuse to the attention of the magistrates and remind them of the important role they play in safeguarding the rights of both the defendant and the people of the State of Michigan. The reviewing magistrate should carefully examine the conspiracy charge to ensure that sufficient evidence exists for each of the elements of that separate crime.

The conspiracy statute provides that a person convicted of a conspiracy "shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit . . . ." MCL 750.157a(a); MSA 28.354(1)(a). It seems obvious that the conspiracy statute's reference to the underlying substantive offense is simply a shortcut for allotting prison terms without having to enact separate statutory provisions for conspiracy that are merely repetitions of the allowable prison terms or fines enumerated for every underlying substantive offense in the Penal Code and the controlled substances act. A mere reference in one statutory section to the punishment enumerated in a separate statutory section does not, without more, incorporate the entirety of the latter section into the former.

Section 7401(3) provides, in relevant part:

> A term of imprisonment imposed pursuant to subsection (2)(a) or section 7403(2)(a)(i), (ii), (iii), or (iv) shall be imposed to run consecutively with any term of imprisonment imposed for the commission of another felony. [MCL 333.7401(3); MSA 14.15(7401)(3).]

It is indisputable that Denio's convictions were obtained pursuant to the conspiracy statute, MCL 750.157a; MSA 28.354(1), and, therefore, it is equally indisputable that his sentences were, and could only be, imposed pursuant to that statute. Notwithstanding the majority's tortured parsing of the term "penalty" and its heavy reliance on the mere truism that *sentencing* provisions are directed at *sentencing* courts, the dispositive fact is that neither charge to which he pleaded guilty subjected him to a term of imprison-

ment pursuant to § 7401(2)(a) or any of the subsections of § 7403(2)(a).

The majority also ignores the black-letter principle that the specific controls the general. The general reference in the conspiracy statute to the penalty prescribed for the relevant underlying crime is superseded by the specific requirement of § 7401(3) that a mandatory imposition of consecutive sentences applies only when a defendant has a "term of imprisonment imposed pursuant to subsection (2)(a) [of § 7401(3)] or § 7403(2)(a)(i), (ii), (iii), or (iv) . . . ." And the fact that the more specific statutory provision was enacted more than a decade after the general language of the conspiracy statute further supports this conclusion.

For the foregoing reasons, I would reverse the decisions of the Court of Appeals and the trial court in *Denio* and would remand the case for resentencing.

I also dissent in *Banks* and *Tucker* because I continue to believe that *People v Morris*, 450 Mich 316; 537 NW2d 842 (1995), was wrongly decided. See *id.* at 338-348 (LEVIN, J., joined by CAVANAGH, J., dissenting).

KELLY, J., concurred with CAVANAGH, J., only in *Denio* and took no part in the decisions of *Banks* and *Tucker*.