PIPER v PETTIBONE CORPORATION

Docket No. 99515. Decided December 5, 1995. On application by the intervening plaintiff for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgments of the Court of Appeals and the circuit court, and remanded the case to the circuit court.

Robert D. Piper and Joyce Piper brought a products liability action in the Wayne Circuit Court against Pettibone Corporation, the manufacturer of a tow vehicle that caused Robert injuries in the course of his employment with Chrysler Corporation. During the pendency of the suit, Chrysler filed a notice that it held a worker's compensation lien arising from its payment of weekly disability benefits and medical benefits under MCL 418.827(5); MSA 17.237(827)(5), and was added as an intervening plaintiff. Thereafter, the plaintiffs agreed to settle their claims for $75,000. The court, William J. Giovan, J., ordered apportionment of four percent of the net recovery for Chrysler Corporation. The Court of Appeals, CAVANAGH, P.J., and MARILYN KELLY and M. D. SCHWARTZ, JJ., affirmed in an unpublished opinion per curiam, holding that MCL 418.827(5); MSA 17.237(827)(5) contains no language to indicate that full reimbursement of the employer is required, reasoning that where the lien amount exceeds the recovery amount, a requirement that the full recovery be paid to the employer would diminish the employee's incentive to file suit or to settle a case and would defeat the statutory purpose of moving the financial responsibility to negligent third-party tortfeasors (Docket No. 145931). Chrysler seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice BRICKLEY, and Justices CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, the Supreme Court *held:*

MCL 418.827(5); MSA 17.237(827)(5) clearly requires that after deducting the expenses of recovery, the $75,000 judgment against Pettibone for damages resulting from the injuries first must be used to reimburse Chrysler for the worker's compensation amounts it has paid.

Reversed and remanded.

Justice LEVIN, dissenting from the peremptory reversal, would grant leave to appeal.

*Lacey & Jones* (by *Gerald M. Marcinkoski*) for Chrysler Corporation.

Amicus Curiae:

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Morrison Zack,* Assistant Attorney General, for the Trustees of the Second Injury Fund, Self-Insurers' Security Fund, and Silicosis, Dust Disease, and Logging Industry Compensation Fund.

PER CURIAM. This is a products liability action arising from a workplace accident. The injured plaintiff received worker's compensation benefits, giving his employer a statutory lien against the amount recovered in this suit. After the plaintiff settled with the alleged tortfeasor for an amount far less than the lien, the circuit court directed that the employer be given only a small portion of the settlement amount. The Court of Appeals affirmed.

Because the Legislature has enacted clear statutory language compelling a different result, we vacate the judgments of the circuit court and the Court of Appeals, and remand this case to the circuit court for further proceedings consistent with this opinion.

I

Plaintiff Robert D. Piper was an employee of Chrysler Corporation. In October 1986, he was seriously injured when a tow vehicle tipped as he was driving it. As a result, Chrysler paid $278,461.81 in weekly disability benefits and medi-

cal benefits[1] under the Worker's Disability Compensation Act.[2]

Mr. Piper and his spouse[3] also sued Pettibone Corporation, the manufacturer of the tow vehicle.[4] This suit is permitted by MCL 418.827(1); MSA 17.237(827)(1), which authorizes so-called third-party actions in such a circumstance.

During the pendency of the plaintiffs' suit against Pettibone, Chrysler filed a notice that it held a worker's compensation lien arising from its payment of benefits. The lien was asserted under MCL 418.827(5); MSA 17.237(827)(5), which provided:[5]

> In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. *Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery* and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits. [Emphasis supplied.]

On the basis of its lien, Chrysler was added to

---

[1] In its application to this Court, Chrysler states that the lien figure has grown to $327,000.

[2] MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*

[3] The claims of plaintiff Joyce Piper were derivative.

[4] The complaint also named Chrysler as a defendant.

[5] The quoted text is MCL 418.827(5); MSA 17.237(827)(5), as amended by 1972 PA 285. The subsection was later amended by 1993 PA 198, but the changes are not pertinent to this dispute.

the case as an intervening plaintiff.[6] The order permitting Chrysler's intervention included this paragraph:

> In the event the named plaintiffs and Chrysler Corporation are unable to agree upon the division or application of the proceeds of any settlement or the responsibility for right of reimbursement for costs of suit, expenses of litigation or the fees of the attorneys engaged in the prosecution of plaintiffs' claims, then either the named plaintiffs or Chrysler Corporation may petition this Court for hearing for the purpose of determining the apportionment of such proceeds or the responsibility for or right to reimbursement of such costs of suit, expenses of litigation or the fees of attorneys.

The following year, the plaintiffs agreed to settle their claims against Pettibone for $75,000. However, the plaintiffs and Chrysler were unable to agree on the division of the settlement. The plaintiffs thus moved for an apportionment order, proposing that the circuit court give Chrysler five percent of the settlement amount ($3,750). Chrysler strongly objected to so small an allocation.

When this matter was argued in circuit court, one of the points of contention was the worth of the plaintiffs' case against Pettibone. The plaintiffs obtained Chrysler's concession that the case against Pettibone might have been worth as much as $1 million *if* liability could have been proven.[7] However, Chrysler insisted that the chances of proving liability were slim, and that $75,000 was all the case was worth (hence the agreement to settle for that figure).

On the ground that they had settled a $1 million

---

[6] Several months later, Chrysler was dismissed as a defendant by stipulation and order.

[7] The plaintiffs suggested that the case might have been worth even more, but $1 million is all that Chrysler would concede.

case for far less than it was worth, the plaintiffs asked that the circuit court award Chrysler an equally small percentage of the recovery. Having noted its statutory right to full reimbursement, Chrysler responded that it would accept one-third of the settlement figure, in accordance with what Chrysler's counsel characterized as the normal custom and usage of the worker's compensation bar in situations where a third-party tort recovery is smaller than the employer's lien.[8]

The parties also argued about reducing the gross settlement figure of $75,000 to reflect the expenses of the litigation. The circuit court agreed with the plaintiffs that the *net* recovery, after expenses of litigation, should be the amount used in calculating the proper allocation.[9]

The circuit court then determined that the net recovery of the plaintiffs reflected approximately four percent of their potential million-dollar claim against Pettibone. The court concluded that it would be equitable to award Chrysler four percent of the net recovery. In this fashion, the circuit court awarded Chrysler $1,680.04.[10]

[8] Chrysler supported this argument with an affidavit from a thirty-year worker's compensation practitioner. Responding to the circuit court's indication of how it would later decide this case, the lawyer swore that "he has never settled a lien subrogation case based on the percentage that the settlement bears to a potential recovery based upon 100 percent liability of the defendant." The attorney stated that, in his experience, "the vast majority of cases such as the case at bar have compromised compensation liens that amount to a one-third split of the net settlement proceeds after payment for costs and attorney fees. That is one-third to the lien holder, one-third to plaintiff and one-third to plaintiff's attorney." Counsel further stated his opinion that "this apportionment of settlement proceeds is the most prevalent and equitable method."

[9] In a supplemental memorandum, Chrysler proposed that it be paid $14,073.71 as one-third of the net settlement proceeds.

[10] The circuit court's order included these paragraphs:

1. The gross settlement is $75,000;
2. The costs are $32,999.01;

The Court of Appeals affirmed.[11] It acknowledged that MCL 418.827(5); MSA 17.237(827)(5) provides that "[a]ny recovery against [Pettibone] . . . shall first reimburse [Chrysler] for any amounts paid or payable under this act to date of recovery . . . ." However, the Court said that this statutory passage "contains no language which would indicate that full reimbursement is required."

The Court reasoned that, where the lien amount exceeds the recovery amount, a requirement that the full recovery be paid to the employer would diminish the employee's incentive to file suit or, if suit were filed, the employee's incentive to settle the case. In turn, concluded the Court, such a requirement would defeat the statutory purpose of moving the financial responsibility to negligent third-party tortfeasors.

Chrysler has applied to this Court for leave to appeal.[12]

II

In its application to this Court, Chrysler asks that we reverse the distribution order of the circuit court "and hold that Chrysler Corporation is

3. The net recovery to the plaintiffs is $42,000.99, or 4% of the reasonable value of plaintiffs' verdict, in this case of $1,000,000.00;

4. Chrysler Corporation's Workers Compensation lien shall be fully satisfied upon payment of $1,680.04, or 4% of the net recovery amount of $42,000.99;

5. Plaintiffs' attorney fee shall be $6,930.16, or 16.5% of the net recovery amount of $42,000.99;

6. The Plaintiffs shall receive $33,390.79.

[11] Unpublished opinion per curiam, issued April 13, 1994 (Docket No. 145931).

[12] A motion for leave to appear as amicus curiae has been filed by the Attorney General, on behalf of the Trustees of the Second Injury Fund, the Self-Insurers' Security Fund, and the Silicosis, Dust Disease, and Logging Industry Compensation Fund. The motion is granted.

entitled to, at a minimum, one-third of the amount of recovery, if not Mr. Piper's entire recovery per MCL 418.827; MSA 17.237(827). Alternatively, the Court should remand the case to the trial court with instructions it devise another, more equitable distribution of the proceeds." Throughout these proceedings, the plaintiffs have likewise argued the equities of this matter, insisting that it would be unfair to award Chrysler a significant portion of the settlement amount.

The difficulty with these appeals to equity is that they are being presented in the wrong forum. It is for the Legislature to weigh the equities in this complex area. Balancing the many competing considerations, the Legislature has produced a statutory enactment of singular clarity:

> Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery. . . . [MCL 418.827(5); MSA 17.237(827)(5).]

As we explained in *Turner v Auto Club Ins Ass'n,* 448 Mich 22, 27-28; 528 NW2d 681 (1995), our task is to identify and effectuate the intent of the Legislature, interpreting only language that fails to reveal on its face the legislative intent.

> The rules governing interpretation of statutes are well established. The cardinal rule of statutory construction is to identify and to give effect to the intent of the Legislature. *Mull v Equitable Life,* 444 Mich 508, 514, n 7; 510 NW2d 184 (1994); *Coleman v Gurwin,* 443 Mich 59, 65; 503 NW2d 435 (1993). The first step in ascertaining such intent is to focus on the language in the statute itself. *Thornton v Allstate Ins Co,* 425 Mich 643,

648; 391 NW2d 320 (1986). If the statutory language is certain and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. *Mull* and *Coleman, supra.*

Where the meaning of statutory language is not clear, judicial construction becomes necessary. Courts are to accord statutory words their ordinary and generally accepted meaning. *Id.* Moreover, when courts interpret a particular phrase in a statute, they must, whenever possible, construe the phrase in such a way that the interpretation does not conflict with, or deny effect to, other portions of the statute. *Grand Rapids v Crocker,* 219 Mich 178, 182-183; 189 NW 221 (1922).

The disputed language of MCL 418.827(5); MSA 17.237(827)(5) is clear with regard to the legal question presented in this case. After deducting the expenses of recovery, the $75,000 judgment against Pettibone for damages resulting from Mr. Piper's personal injuries or death must first be used to reimburse Chrysler for the worker's compensation amounts it has paid.

We recognize that the outcome in this case deprives the plaintiffs of the proceeds of their recovery from Pettibone. In this regard, we are reminded of this Court's statement in an earlier worker's compensation case:

> The statute, as it is written, may not afford the plaintiff what some would regard as adequate relief, or may render that relief more difficult to obtain. . . . While we may be sympathetic to the plaintiff's predicament, we are reminded that " '[i]t is not within the province of this Court to read [into a statute] a mandate that the legislature has not seen fit to incorporate. Our duty is to apply the law as we find it.' " *Joslin v Campbell, Wyant & Cannon Foundry Co,* 359 Mich 420, 429; 102 NW2d 584 (1960), quoting *Jones v Grand Ledge Public Schools,* 349 Mich 1, 11; 84 NW2d 327 (1957); *Cadeau v Boys' Vocational School,* 359

Mich 598, 609; 103 NW2d 443 (1960). [*Carter v Detroit Harbor Terminals, Inc,* 414 Mich 498, 505; 327 NW2d 257 (1982).]

While there could be other reasonable formulae for the allocation of a third-party recovery in the circumstances of this case, imposition of an alternative method is not within the province of this Court. In the face of clear statutory language, we are not free to select another approach on the ground that we deem it more equitable. We must enforce the clear statutory language, as written.

For these reasons, we reverse the judgments of the Court of Appeals and the circuit court, and we remand this case to the circuit court for entry of an order consistent with this opinion. MCR 7.302(F)(1).

BRICKLEY, C.J., and CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred.

LEVIN, J. I would not dispose of the case by per curiam opinion, but would. instead grant leave to appeal to have the case briefed and orally argued, and I dissent from the peremptory reversal of the Court of Appeals.

Granting leave to appeal would provide the parties and the many potentially interested amici curiae with an opportunity to file full briefs respecting the analysis of the Court of Appeals and the circuit court in the instant case, and would provide the Court with a fuller opportunity to compare the rationale underlying the per curiam opinion signed by the majority in the instant case. with the rationale underlying the opinion of the Court in *Franges v General Motors Corp,* 404 Mich 590; 274 NW2d 392 (1979). See also the several opinions of the justices in *Eddington Estate v Eppert Oil Co,* 441 Mich 200; 490 NW2d 872 (1992).