BEAUDRIE v ANCHOR PACKING COMPANY

SMITH v ARMSTRONG WORLD INDUSTRIES, INC

WRIGHT v ANCHOR PACKING COMPANY

Docket Nos. 196195, 196196, 196197. Submitted January 13, 1998, at
   Detroit. Decided August 18, 1998, at 9:00 A.M.

   Ruth Beaudrie, as personal representative of the estate of Merel Beau-
      drie, deceased, and Emogene Wright, as personal representative of
      the estate of Ralph Wright, deceased, each brought a wrongful
      death action in the Wayne Circuit Court against Anchor Packing
      Company and others. Juanita Smith, as personal representative of
      the estate of William B. Smith, deceased, brought a wrongful death
      action in the Wayne Circuit Court against Armstrong World Indus-
      tries, Inc., and others. In each action, the plaintiff sought damages
      for the death of the decedent from mesothelioma caused by expo-
      sure to asbestos. The Silicosis, Dust Disease, and Logging Industry
      Compensation Fund filed in each action a notice of lien on any set-
      tlement or judgment recovered by the plaintiff and was permitted
      to intervene in each action to protect its lien interest. Each plaintiff
      entered into a settlement with certain of the defendants, and the
      court, James E. Mies, J., entered a consent judgment in each
      action. Each judgment divided the recovery among the interested
      parties and provided that the fund could exercise its lien against
      the entire judgment, irrespective of whether payable for economic
      or noneconomic losses or whether payable to parties who were not
      beneficiaries of worker's compensation benefits. Each plaintiff
      appealed, and the fund cross appealed in the Beaudrie and Wright
      appeals. The appeals were consolidated. The Court of Appeals
      affirmed in part, reversed in part, and remanded for modification of
      the consent judgments. 206 Mich App 245 (1994). The Court of
      Appeals held that the fund's right to reimbursement is controlled by
      subsection 827(5) of the Worker's Disability Compensation Act,
      MCL 418.827(5); MSA 17.237(827)(5), which in *Eddington Estate v
      Eppert Oil Co*, 441 Mich 200 (1992), was construed by a majority of
      the Supreme Court as permitting reimbursement from the entire
      amount of a third-party recovery for the death of an employee irre-
      spective of the type of damages recovered. Accordingly, the trial
      court properly allowed the fund to assert its lien with respect to

those portions of the recovery designated for loss of consortium or loss of society and companionship. The Court also noted that the fund conceded that *Eddington* precludes the fund's assertion of its lien with respect to any portion of the recovery designated for a party who was not eligible for worker's compensation benefits as a result of the decedents' deaths. Accordingly, the trial court's orders were reversed to the extent that they permit the liens to attach to the recoveries of the decedents' adult, nondependent children. The Court also found that the fund's failure to object in the trial court to the allocation of the proceeds or to examine witnesses with respect to the allocation of the proceeds precluded raising the question of the allocation of the proceeds by way of cross appeal. On remand, the court, Robert J. Colombo, J., entered orders modifying the consent judgments. Each plaintiff appealed (Beaudrie, Docket No. 196195; Smith, Docket No. 196196; Wright, Docket No. 196197). The appeals were consolidated.

The Court of Appeals *held*:

1. The court did not err in finding that the dependency status of Eric Smith had not been previously adjudicated.

2. The court did not err in holding that the appellees were not liable for a proportionate share of all expenses of the third-party recovery. The court properly held that the appellees were not responsible for the expense of that portion of the recovery going to the nondependent children. The adult nondependent children were "parties" for purposes of apportioning the expenses of the recovery among the parties under MCL 418.827(6); MSA 17.237(827)(6).

3. The court did not err in holding that subsequent recoveries from asbestos manufacturers should invoke a recalculation of the appellees' rights as the lienholders.

4. The court properly held that the plaintiffs were entitled to statutory interest only from the date the payments were due until the date the appellees offered to compensate the plaintiffs for the underpayments out of the escrow account established by the trial court. Any further delay in receiving the payments was the result of the plaintiffs' refusal to accept the appellees' offer. The interest payment is not a penalty against the employer and is only intended to compensate a beneficiary for the loss of the use of the funds.

5. The plaintiffs lack standing to argue that *Nelligan v Gibson Insulation Co*, 193 Mich App 274 (1992), was wrongly decided.

Affirmed.

1. WORKER'S COMPENSATION — EMPLOYEE'S DEPENDENTS.

The dependency status of an individual for worker's compensation purposes is a question of fact governed by the circumstances on the date of the employee's injury (MCL 418.341; MSA 17.237[341]).

2. WORKER'S COMPENSATION — THIRD-PARTY RECOVERIES — APPORTIONMENT OF EXPENSES — WORDS AND PHRASES — PARTIES.

Persons having an interest in a wrongful death action include not only the named parties but also beneficiaries such as the adult children of the deceased and worker's compensation lienholders; all persons with a financial interest in the litigation must be included within the word "parties" for purposes of apportioning the expenses of the recovery among the parties under MCL 418.827(6); MSA 17.237(827)(6).

3. WORKER'S COMPENSATION — THIRD-PARTY RECOVERIES — REIMBURSEMENT — EXPENSES.

An employer, worker's compensation insurer, and, where appropriate, the Silicosis, Dust Disease, and Logging Industry Compensation Fund is entitled to reimbursement from any recoveries against a third party for damages resulting from personal injuries or death for which worker's compensation benefits have been paid and the employer, insurer, or the fund must also share in the expenses of every such recovery (MCL 418.827[5]; MSA 27.237[827][5]).

4. WORKER'S COMPENSATION — PAST DUE BENEFITS — INTEREST.

The statutory interest imposed upon past due amounts under an award of worker's compensation benefits is not a penalty and is only intended to compensate a beneficiary for the loss of the use of the funds.

5. TRIAL — ISSUES — STANDING.

A person seeking to establish standing to raise an issue regarding the correctness of an opinion of the Court of Appeals entered in an action in which the person was not a party must demonstrate that as a result of the opinion the person's substantial interest will be detrimentally affected in a manner different from the citizenry at large.

*Zamler, Mellen & Shiffman, P.C.* (by *Neil A. Kay*) (*Daryl Royal*, of Counsel), for the plaintiffs.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Morrison Zack*, Assis-

tant Attorney General, for the Silicosis, Dust Disease, and Logging Industry Compensation Fund.

Before: GAGE, P.J., and REILLY and JANSEN, JJ.

GAGE, P.J. Plaintiffs in these consolidated appeals appeal as of right from circuit court orders modifying their prior consent judgments on remand from this Court. *Beaudrie v Anchor Packing Co*, 206 Mich App 245; 520 NW2d 716 (1994). We affirm.

Plaintiffs, the personal representatives of their spouse's estates, each claimed that their spouses died of mesothelioma resulting from exposure to asbestos during the course of their employment. Before their spouses' deaths, plaintiffs and the decedents had obtained worker's compensation benefits from the decedents' employers, appellees Johnson Controls, Ford Motor Company, and Detroit Edison Company. Plaintiffs later sued various manufacturers of asbestos who they alleged were responsible for their decedents' injuries. The employers and appellee Silicosis, Dust Disease, and Logging Industry Compensation Fund (hereafter the dust fund),[1] which reimbursed the employers for a portion of plaintiffs' worker's compensation benefits, intervened and sought liens on plaintiffs' potential recoveries from the asbestos manufacturers.[2]

Plaintiffs obtained settlements from some of those manufacturers and entered into consent judgments.

---

[1] This fund is properly known as the Silicosis, Dust Disease, and Logging Industry Compensation Fund. MCL 418.501(2); MSA 17.237(501)(2). The various fund misappellations appearing in the caption apparently arose in trial court pleadings.

[2] The dust fund has assumed primary responsibility for the appeals of this litigation. The employers have not filed briefs with this Court.

The circuit court entered orders permitting the dust fund and the employers to exercise their liens against the entire judgments. Plaintiffs appealed. In its prior *Beaudrie* opinion, this Court held that in a wrongful death action, a worker's compensation carrier is entitled to reimbursement from the entire amount of the recovery awarded to an individual who is also a worker's compensation beneficiary, regardless of the type of damages recovered. *Id.* at 249. Therefore, the Court remanded for the necessary modifications to the consent judgments. *Id.* at 249-250. Plaintiffs now contend that the circuit court erred in implementing this Court's decision on remand.

I

MCL 418.827(1); MSA 17.237(827)(1) expressly permits an injured employee who is entitled to worker's compensation benefits to also obtain damages from a third party. If such a third-party recovery occurs, however, the recovery must first be used to reimburse the employer or worker's compensation insurer for worker's compensation benefits paid. MCL 418.827(5); MSA 17.237(827)(5) grants an employer or its carrier a lien on any third-party recovery for the same injury for which worker's compensation benefits have been paid. Subsection 827(5) provides in pertinent part:

> Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery and the balance shall immediately be paid to the employee or his or her dependents or personal representative and shall be treated as an advance payment by the

employer on account of any future payments of compensation benefits.

When an employee is fatally injured and his dependents or personal representative file a wrongful death action, "any recovery" for damages resulting from the employee's death is subject to the employer's or carrier's right of reimbursement even though those damages include an award for loss of society and companionship. *Jones v McCullough*, 227 Mich App 543, 546; 576 NW2d 698 (1998). The dust fund also has a statutory lien on a third-party recovery when the fund has reimbursed the employer for some or all of the expense of worker's compensation payments. MCL 418.531(3); MSA 17.237(531)(3).

The worker's compensation statute also takes into account the "expenses of recovery" in the third-party action and apportions those expenses "between the parties." These expenses specifically include attorney fees. MCL 418.827(6); MSA 17.237(827)(6) provides:

> Expenses of recovery shall be the reasonable expenditures, including attorney fees, incurred in effecting recovery. Attorney fees, unless otherwise agreed upon, shall be divided among the attorneys for the plaintiff as directed by the court. Expenses of recovery shall be apportioned by the court between the parties as their interests appear at the time of the recovery.

The obvious purpose of this apportionment is to make the employer or worker's compensation carrier (and accordingly when appropriate the dust fund as well) pay a portion of the expenses connected with a third-party recovery, because the employer or carrier receives the benefit of the recovery by using it to pay the worker's compensation obligation. This is consis-

tent with "one of the major purposes" of the legislative scheme, which is "to provide the opportunity for full recovery by each and thereby place the liability for the injury and the resulting cost upon the negligent party." *Franges v General Motors Corp*, 404 Mich 590, 613; 274 NW2d 392 (1979). The formula for computing the apportionment of the costs of recovery is detailed in *Franges, supra* at 617-623.

We note that parties eligible to recover in a third-party action may not be eligible to recover in a worker's compensation proceeding. Generally, those who can recover under the worker's compensation statutes are the employee and the employee's dependents. MCL 418.353; MSA 17.237(353). However, in a tort action, many people might recover for derivative injuries, including nondependent adult children and parents. In the present cases, a certain percentage of the recovery was allocated to the adult nondependent children of the deceased employees.[3]

---

[3] In the original circuit court proceedings, the plaintiffs reached settlements with various of the defendant asbestos manufacturers. As part of the settlements, the personal representatives who were the widows of the deceased employees requested that certain percentages of the recoveries be allocated to their adult children. Mrs. Beaudrie requested that fifty percent of the recovery be divided equally among her four adult children, even though none of the children were dependent on the deceased. Mrs. Wright asked that 37-1/2 percent of the recovery go to the decedent's adult son who had lived with his parents for thirty-six years but was capable of self-support. Mrs. Smith requested that twenty-eight percent of the recovery be divided among the decedent's six adult children and one minor daughter. Defendants did not object to the allocation of the recovery to the adult children, and the circuit court's consent judgments reflected these percentages.

In its prior cross-appeal, the dust fund argued that the percentages awarded to the nondependent adult children constituted an effort to circumvent the fund's lien on the recovery and were not supported by the record. This Court ruled that by failing to cross-examine witnesses when it had the opportunity to do so and to object to the allocation of the pro-

II

Plaintiffs first argue that the circuit court erred in finding that the dependency status of Eric Smith had not been previously adjudicated. They contend that the doctrine of res judicata bound the circuit court to its previous ruling that Eric was not his father's dependent. We disagree.

In the original circuit court order, the court found that the liens of the employers and the dust fund "shall apply to all damages recovered including, but not limited to the damages for loss of society and companionship recovered by decedent's adult, non-depend[e]nt children Tony Smith, Sharon Smith, the Estate of Eric Smith, Carrie Smith, Willie Mae Smith and Robin Smith Mayes." This Court in its prior decision noted that the dust fund had conceded that its liens could attach only to recoveries by parties who are eligible for worker's compensation benefits and therefore should not attach to recoveries by the decedents' nondependent adult children. *Beaudrie, supra* at 249-250. However, the opinion did not consider which individuals were the decedents' nondependent children. It was proper, therefore, for appellee to raise this issue in the circuit court on remand from this Court.

The dependency status of an individual for worker's compensation purposes is a question of fact governed by the circumstances on the date of the employee's injury. MCL 418.341; MSA 17.237(341). The circuit court did not hold evidentiary hearings regarding this issue before this Court's remand because the depen-

---

ceeds among the interested parties, the dust fund had waived the issue. *Beaudrie, supra* at 250.

dency status of the children was not relevant under the circuit court's original orders and only became relevant after this Court's decision. The listing that included Eric Smith with the other undisputedly non-dependent adult children did not therefore constitute an adjudication of Eric's dependency status on the date of his father's injury, and the circuit court did not err in so holding.

III

Next, plaintiffs contend that the circuit court erred in holding that appellees were not liable for a proportionate share of all expenses of the third-party recovery.

On remand to the circuit court, a controversy arose regarding how the expenses of the recovery should be apportioned among the parties under MCL 418.827(6); MSA 17.237(827)(6). The court ordered that

> attorney fees and costs shall be excluded on a proportionate basis for any adult, non-dependent child who receives wrongful death benefits but who is not entitled to receive worker's disability compensation benefits. The proportionate basis shall be the ratio that the share of the wrongful death benefit recovery awarded to any adult, non-dependent child who is not entitled to receive worker's compensation benefits bears to the total wrongful death benefit recovery.

Plaintiffs base their challenge to this order on the last sentence of MCL 418.827(6); MSA 17.237(827)(6), which states that the expenses of recovery "shall be apportioned by the court between the parties as their interests appear at the time of the recovery." Plaintiffs argue that the adult nondependent children of the

decedents are not "parties" and therefore the circuit court erred in holding that appellees were not responsible for the expense of that portion of the recovery going to the nondependent children. We disagree.

In their argument, plaintiffs cite the wrongful death statute, which provides that all wrongful death actions "shall be brought by, and in the name of, the personal representative of the estate of the deceased person." MCL 600.2922(2); MSA 27A.2922(2). Plaintiffs contend that the only "party" on the plaintiff's side in a wrongful death action is the personal representative, and the beneficiaries of the action are therefore not "parties" within the meaning of MCL 418.827(6); MSA 17.237(827)(6). We find that plaintiffs' interpretation of the statute fails to take into account the words "as their interests appear at the time of the recovery." In construing a statute, a court should presume that every word has some meaning and should avoid any construction that would render any part of a statute surplusage or nugatory. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992). As far as possible, effect should be given to every phrase, clause, and word. *Jenkins v Great Lakes Steel Corp*, 200 Mich App 202, 209; 503 NW2d 668 (1993). As the dust fund points out in its brief, those having an interest in a wrongful death action include not only the named parties but also beneficiaries, such as the adult children, and worker's compensation lienholders, such as appellees. In order to give effect to every word of MCL 418.827(6); MSA 17.237(827)(6), all with a financial interest in the litigation must be included within the word "parties."

Plaintiffs alternatively contend that "the parties" referred to in the statute are the parties to the

worker's compensation action, which by law would not include the employees' nondependent adult children. However, this argument also fails because MCL 418.827(6); MSA 17.237(827)(6) plainly provides that the expenses of recovery shall be apportioned by "the court." "[T]he clear language of the current statute bestows the responsibility for dividing attorney fees and apportioning the expenses of recovery between the parties on the court, not on the Bureau of Workers' Disability Compensation." *Seay v Spartan Aggregate, Inc*, 183 Mich App 46, 51; 454 NW2d 186 (1990).

Moreover, in order for the employee, the employer, and the insurer to have a "full recovery," *Franges, supra* at 613, each party must pay the portion of expenses related to their respective recoveries. This Court's prior opinion in this matter notes that the dust fund conceded that any recovery by a party who was not eligible for worker's compensation benefits was not subject to an employer's or insurer's lien. *Beaudrie, supra* at 249.[4] Therefore, the dust fund's reimbursement does not include amounts from the third-party recovery received by the adult children, who were not entitled to worker's compensation benefits. Those amounts were therefore not considered in determining the appellees' portions of the expenses

---

[4] In this Court's prior opinion, the panel declined to consider the merits of this issue in light of the dust fund's concession. *Beaudrie, supra* at 249-250. We also so decline because the issue is not before us. However, we note that in *Eddington Estate v Eppert Oil Co*, 441 Mich 200; 490 NW2d 872 (1992), a plurality of the Supreme Court held that "the reimbursement to the employer or carrier appears to attach before the distribution of the proceeds to the personal representative and any subsequent distribution to those listed in [the wrongful death statute]." *Id.* at 215. "Nothing in [MCL 418.827(5); MSA 17.237(827)(5) ] requires, as a condition precedent, that a third-party tort-recovery recipient receive compensation benefits." *Id.*

of recovery. Although no published appellate decisions reach this exact issue, we agree with the circuit court's decision given the unique facts of this case, including the dust fund's concession that it was unable to reach the recoveries of the nondependent adult children.[5]

IV

Plaintiffs next argue that the circuit court erred in holding that subsequent recoveries from asbestos manufacturers should invoke a recalculation of appellees' rights as the lienholders. We disagree. MCL 418.827(5); MSA 17.237(827)(5) provides that an employer or insurer, or in this case the dust fund, is entitled to reimbursement from *any* recovery against a third party for damages resulting from personal injuries or death. It follows that the employer or insurer or the fund must also share in the expenses of every such recovery.

We are not persuaded by plaintiffs' argument that the Supreme Court's construction of MCL 418.827(5); MSA 17.237(827)(5) in *Franges, supra*, requires us to find that an employer is entitled to a single reimbursement of benefits paid. *Franges* discussed reim-

---

[5] We also find support for this view in *Schalk v Michigan Sewer Constr Co*, 62 Mich App 658; 233 NW2d 825 (1975), which was reversed on other grounds by *Franges, supra*. In *Schalk*, the plaintiff's wife received $15,000 for loss of consortium out of a $125,000 third-party recovery. This amount was not considered part of the "gross recovery" that the worker's compensation insurer's lien could reach. The attorney's fee that was apportioned between the parties was exactly one-third of $110,000, the portion of the recovery that benefited the insurer. It seems fair to assume that there were additional attorney fees associated with the $15,000 that were never considered in apportioning the expenses of recovery related to the parties to the worker's compensation case. In other words, the portion of the attorney fee related to the recovery that did not benefit the worker's compensation insurer was simply out of the picture.

bursement rights in a situation involving a single
tortfeasor and a single recovery. In the instant cases,
plaintiffs filed against multiple tortfeasors and have
acquired multiple recoveries. As the dust fund points
out in its brief, if only the first recovery were used for
a *Franges* calculation, there might be incentive for
manipulation so that smaller recoveries came first,
thus depriving the employer and insurer the opportu-
nity for a "full recovery." *Franges, supra* at 613.
Therefore, unless the parties agree to some other res-
olution, the *Franges* formula must be repeatedly
applied with each new recovery. The circuit court did
not err in so ruling.[6]

V

Next, plaintiffs argue that the circuit court erred in
failing to award statutory interest on underpayment
of benefits until the actual payment date. We find that
the circuit court properly held that plaintiffs were
entitled to statutory interest only from the date the
payments were due until the date appellees offered to
compensate plaintiffs for the underpayments out of
the escrow account established by the circuit court.
Any further delay in receiving the payments was the
result of plaintiffs' refusal to accept appellees' offer,
and plaintiffs should not be permitted to benefit from
such refusal. See *Chisholm v Chisholm Constr Co*,
298 Mich 25, 29-31; 298 NW 390 (1941). Further,
plaintiffs' argument that the interest statute must be
construed as a penalty against the employers is incor-

---

[6] The dust fund attempts to raise a separate argument that the formula
presented in *Franges, supra*, is flawed. However, this issue is not prop-
erly before us because an appellee is limited to the issues raised by the
appellant unless the appellee files a cross appeal. *Barnell v Taubman Co,
Inc*, 203 Mich App 110, 123; 512 NW2d 13 (1993).

rect. The interest payment is not a penalty and is only intended to compensate a beneficiary for the loss of the use of the funds. *McCaslin v General Motors Corp*, 133 Mich App 782, 788; 349 NW2d 544 (1984).

VI

Finally, plaintiffs argue that *Nelligan v Gibson Insulation Co*, 193 Mich App 274; 483 NW2d 460 (1992), was wrongly decided. In *Nelligan*, this Court held that an employer could be reimbursed by the dust fund for out-of-pocket expenses in excess of the statutory threshold and that the dust fund was permitted to offset any recovery obtained by the employer from the employer's expenditures. *Id.* at 281-282. The circuit court declined to address the propriety of this opinion, and we also so decline. Plaintiffs lack standing to raise this issue. Standing requires a demonstration that the plaintiff's substantial interest will be detrimentally affected in a manner different from the citizenry at large. *House Speaker v State Administrative Bd*, 441 Mich 547, 554; 495 NW2d 539 (1993). The *Nelligan* holding involves obligations running between the employer and the dust fund. Plaintiffs have demonstrated no interest in the opinion different from the citizenry at large.

Affirmed.